## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

BILLIE CONLEY, JR.,

               Plaintiff,

   v.

1008 BANK STREET, LLC D/B/A
RIVERSIDE AUTO II,

             Defendant.

Civil Action No.
3:20-cv-284 (CSH)

**AUGUST 22, 2020**

### RULING AND ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**HAIGHT, Senior District Judge:**

Plaintiff Billie Conley, Jr. ("Plaintiff") brings this action for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. §§ 36a-770 *et seq.* ("RISFA"), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq*., against Defendant 1008 Bank Street, LLC d/b/a Riverside Auto II ("Riverside Auto" or "Defendant"), an automobile dealership in New London, Connecticut. *See* Doc. 1 ("Compl.").

The Docket reflects that Plaintiff perfected service of the Complaint upon Defendant. *See* Doc. 6. Defendant has not appeared or answered the Complaint. Plaintiff moved under Fed. R. Civ. P. 55(a) for the entry by the Clerk of Defendant's default. *See* Doc. 8. That motion was granted, and Defendant's default was entered on the Docket. *See* Doc. 9.

Pending before the Court is Plaintiff's motion for default judgment under Rule 55(b). *See* Doc. 10 ("Mot. for Def. J."); Doc. 10-1 ("Pl.'s Mem."). Plaintiff also seeks an Order from this Court

1

directing Sensible to release title to Plaintiff so that Plaintiff may sell the vehicle and apply the proceeds to a judgment. Pl.'s Mem. at 29. This Ruling resolves those motions.

## I.  <u>BACKGROUND</u>

### A.  **Factual Background**

The following facts are derived from Plaintiff's Complaint and other submissions. The well-pleaded facts alleged in the Complaint are deemed admitted, Defendant having failed to file an answer.

Prior to July 16, 2019, Plaintiff saw a 2012 BMW 750i (the "Vehicle") for sale on Facebook Marketplace for a sale price of $15,900.00. Compl. ¶ 7. The advertisement did not disclose a dealer conveyance fee. *Id.*

On or about July 10, 2019, Plaintiff visited Riverside Auto to test drive the Vehicle, and he met with salesman Sean Richards ("Richards"). *Id.* ¶ 8. After Plaintiff completed a credit application, Richards reported to Plaintiff that the sale price of the Vehicle was $16,500.00—$600.00 more than the advertised price. *Id.* ¶ 9. Although Plaintiff objected to the Vehicle's new price, Richards explained to Plaintiff that the price increase was a result of Plaintiff's credit rating. *Id.* ¶ 10. Nonetheless, Plaintiff agreed to purchase the Vehicle, and further agreed to pay a down payment of $6,500.00. *Id.* ¶ 11.

Unbeknownst to Plaintiff, on or about July 13, 2019, Riverside Auto prepared a Retail Installment Contract (the "Contract") and electronically forged Plaintiff's signature on the Contract. *Id.* ¶ 12. Riverside Auto then submitted the forged Contract to Sensible Auto Lending, LLC ("Sensible"), an automobile financing company. *Id.* ¶ 12. Plaintiff could not have signed the Contract on July 13, 2019, because he was out of state on that date. *Id.* ¶ 13.

2

Meanwhile, the Contract listed the price of the Vehicle as $17,566.80, including sales tax of $1,066.80, and a cash down payment of $6,250.00, even though Plaintiff had not yet paid a down payment. *Id.* ¶ 14.  The Contract also included a charge of $395.00 for Guaranteed Asset Protection ("GAP"), which Plaintiff neither requested nor desired, and the Contract included an assignment to Sensible. *Id.*[1]

Plaintiff returned to Riverside Auto on July 16, 2019, to pay the down payment, finalize the purchase, and sign the contract documents. *Id.* ¶ 15.  Riverside Auto presented Plaintiff with the Contract and instructed him to sign next to the forged electronic signature. *Id.* ¶ 16.  Plaintiff noticed the GAP charge on the Contract, and when he asked Riverside Auto about the charge, Riverside Auto told him a GAP addendum was required by the lender—*i.e.*, Sensible. *Id.* ¶ 17.

After Plaintiff signed the Contract, Riverside Auto requested that Plaintiff pay a down payment of $6,500.00. *Id.* ¶ 18.  Plaintiff questioned the down payment figure because the Contract listed a down payment of only $6,250.00. *Id.*  But, Riverside Auto explained to Plaintiff that $150.00 of the down payment would be applied to registration costs, and the remaining $100.00 would be applied towards his first loan payment. *Id.*  Plaintiff thereafter provided Riverside Auto with a bank check in the amount of $6,500.00. *Id.*

Soon after taking delivery of the Vehicle, Plaintiff began to experience problems with the Vehicle's engine, including smoke coming from the Vehicle's exhaust, problems with the tires, and

---

[1]  The Insurance Information Institute provides the following description regarding GAP: "If, when you finance the purchase of a new car and put down only a small deposit, in the early years of the vehicle's ownership the amount of the loan may exceed the market value of the vehicle itself. In the event of an accident in which you've badly damaged or totaled your car, gap insurance covers the difference between what a vehicle is currently worth (which your standard insurance will pay) and the amount you actually owe on it."  Insurance Information Institute, *What is gap insurance?*, https://www.iii.org/article/what-is-gap-insurance (last accessed Aug. 5, 2020).

a foggy mirror.  *Id.* ¶ 19.  Additionally, the tires were worn and unsafe.  *Id.*  Plaintiff's warranty covered many of the repairs, but Plaintiff still paid some repair costs out-of-pocket: $1,103.27 to Town Fair Tire for new tires and installation; $1,295.56 to BMW of North Haven for engine repairs; $400.30 to BMW of North Haven to replace ignition coil; and an additional $630.11 to replace the mirror.  *Id.* ¶ 20. In total, Plaintiff paid $3,429.24 for repairs.  *Id.*

On October 22, 2019, Plaintiff, through counsel, served notice on Riverside Auto that he was rescinding the transaction due to violations of RISFA, and he demanded a return of all sums paid under the Contract.  *Id.* ¶ 21.  In the meantime, Plaintiff retained possession of the Vehicle.  *Id.*

Sensible has agreed to the rescission of the Contract and it has returned the amounts paid to it under the Contract to Plaintiff.  *Id.* ¶ 22.  However, Riverside Auto has failed to return any sums paid by Plaintiff.  *Id.* ¶ 23.  Sensible has retained the title to the Vehicle pending a determination of the above-captioned lawsuit against Riverside Auto; but it has agreed to release the title in accordance with this Court's determination of the rights of the Vehicle.  *Id.* ¶ 24.

**B.     Plaintiff's Motion for Default Judgment**

Pending before the Court is Plaintiff's motion for default judgment.  It asks the Court to enter a judgment in favor of Plaintiff and against Defendant Riverside Auto in the amount of $25,199.24. Pl.'s Mem. at 29.

The documents Plaintiff submits in support of his Rule 55(b) motion include an affidavit in which Plaintiff attests to the advertised price of the vehicle, the finance charges included in the forged contract, and other costs incurred by Plaintiff in connection with the sale of the vehicle.  Doc. 10-2.  Plaintiff also submits a copy of the Contract itself, *id.* at 6, as well as a declaration from his

Counsel Daniel S. Blinn, in which Attorney Blinn attests to the amount of attorney's fees that Plaintiff has incurred thus far in connection with this dispute, Doc. 10-3.

The damages estimated by Plaintiff are the following: (1) $9,929.24 in liquidated damages ($6,500.00 for the down payment and $3,429.24 in repairs costs); (2) $2,000.00 in statutory damages under TILA; (3) $5,000.00 in punitive damages under CUTPA; and (4) $8,270.00 in attorney's fees, for a total of $25,199.24.  Pl.'s Mem. at 28.

## II.   <u>STANDARD OF REVIEW</u>

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).  "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

The first step of the process—entry of default—"formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.*  The entry of default in a litigation is governed by Rule 55(a), which states: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Although an entry of a default establishes liability, it is "not an admission of damages." *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009).

The second step of the process—entry of default judgment—"converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any

relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. Under Rule 55(b), the clerk must enter judgment against a defendant "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). In all other cases, however, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The distinction the Rule draws is between the clerk of the court, on the one hand, and a district judge, on the other (referred to in Rule 55(b)(2) as "the court").

In evaluating whether a party is entitled to entry of default judgment against a defendant, "[i]t is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." *Mickalis Pawn Shop*, 645 F.3d at 137. Even so, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation and internal quotation marks omitted). Rather, "prior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Id.* (citation and internal quotation marks omitted; alterations in original).

After the district court makes that determination, it must then "determine the amount of damages to be awarded; to do so, it may conduct a hearing or it may make such a finding on the basis of documentary evidence if damages are ascertainable with reasonable certainty." *Chance v. Karmacharya*, No. 14 Civ. 1111 (JAM), 2017 WL 5515951, at *1 (D. Conn. Mar. 20, 2017) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)); *see also Mickalis Pawn Shop*, 645 F.3d at 129 ("A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." (citing Fed. R. Civ. P. 55(b)(2)(B)–(C)).

6

In sum, the Court will first determine whether Plaintiff has established Defendant's liability as a matter of law. Thereafter, the Court will determine the amount of damages that are appropriate, or it will identify the process that will permit the Court to undertake that inquiry.

## III.   <u>DISCUSSION</u>

**A.     Liability**

Plaintiff brought four claims against Defendant: (1) that it violated TILA; (2) that it violated RISFA; (3) that it committed civil forgery in violation of Conn. Gen. Stat. Ann. § 52-565; and (4) that it violated CUTPA. *See generally* Compl. The Court will address these claims in order to determine if Plaintiff's allegations have established Defendant's liability as a matter of law.[2]

### 1.   *Truth in Lending Act*

The Court first turns to Plaintiff's TILA claim. Plaintiff alleges that Riverside Auto violated TILA by: (1) failing to disclose a finance charge imposed by Sensible in connection with the Contract and instead inflated the sale price; (2) improperly listing the GAP insurance charge as part of the amount financed, rather than as a component of the finance charge; (3) improperly listing the amount of the down payment; (4) failing to provide Plaintiff with financial disclosures prior to forging Plaintiff's name; (5) inaccurately listing the payment schedule in the Contract; and (6) failing to properly disclose the transaction's true APR. The Court will address these claims in order.

#### a.     <u>Failure to Disclose Finance Charge: Fee Imposed by Sensible</u>

"The Truth in Lending Act . . . provides for a private right of action for damages where a creditor fails to make disclosures required by the Act." *Rodriguez v. Auto Sales, Inc.*, 477 F. Supp.

---

[2] In his present motion, Plaintiff does not argue that the Court should enter a default judgment with respect to his civil forgery claim. *See generally* Pl.'s Mem. Accordingly, the Court will not address this claim.

2d 477, 479 (D. Conn. 2007) (citing 15 U.S.C. §§ 1638, 1640).  The Act's purpose is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364–65 (1973); *see also Poulin v. Balise Auto Sales, Inc.*, No. 08 Civ. 1618 (CSH), 2010 WL 1370862, at *3 (D. Conn. Apr. 5, 2010), *aff'd*, 647 F.3d 36 (2d Cir. 2011) (discussing TILA's statutory goals and structure).

TILA defines "creditor" as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).  Additionally, among other mandates with which creditors must comply, the Act:

> [R]equires that creditors in consumer credit transactions disclose the identity of the creditor, the amount financed, a statement of the consumer's right to obtain a written itemization of the amount financed, the finance charge, the APR, the total payments and the number, amount, and due dates or period of payments scheduled to repay the total payments.

*James v. Lopez Motors, LLC*, No. 16 Civ. 835 (VLB), 2018 WL 1582552, at *3 (D. Conn. Mar. 31, 2018) (citing 15 U.S.C. § 1638(a)).

Under TILA's regulations—also known as Regulation Z—a "finance charge" includes "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."  12 C.F.R. § 226.4(a).  As the

Second Circuit has explained, "[b]ased on the language of 15 U.S.C. § 1605(a), Regulation Z, and the official staff interpretation, courts have concluded that a creditor is obligated under § 1638(a)(3) to disclose as a finance charge any costs charged to customers buying on credit, but not charged to customers buying with cash, in comparable transactions." *Poulin*, 647 F.3d at 39.  For example, a "finance charge" includes "[s]ervice, transaction, activity, and carrying charges."  12 C.F.R. § 226.4(b)(2).

In an analogous case, this Court examined a hidden finance charge in the context of a motion for default judgment.  *See Alexis v. PMM Enterprises LLC*, No. 17 Civ. 1622 (MPS), 2018 WL 5456491 (D. Conn. Oct. 29, 2018).  In *Alexis*, the facts were similar to the case at bar: an automobile salesperson told the plaintiff that the vehicle price was $16,900.00; and, after the plaintiff agreed to purchase the car, the contract listed the vehicle's purchase price as $18,000.00.  *See id.* at *1.  When the plaintiff asked about the discrepancy, he was told that the additional $1,100.00 was a "bank fee." *See id.*  Thereafter, in a subsequent lawsuit premised on TILA liability, the plaintiff alleged that the bank fee was a finance charge included to compensate the auto dealership for arranging the sale with the lender.  *See id.*  The Court agreed: it was "an additional charge beyond the price at which [the dealership] would have sold the car to a customer for cash"; and that, "[i]ncluding the bank fee in the cash price of the vehicle . . . allowed [the dealership] to understate the finance charge." *Id.* at *3.

Turning to the case at bar, Plaintiff has established that Riverside Auto failed to disclose a finance charge in violation of TILA.  According to Plaintiff, the original advertised sale price was $15,900.00, but Riverside Auto later said—and the Contract reflected—a sale price of $16,500.00. *See* Section I.  Plaintiff asserts that this $600.00 increase was due to fees charged by Sensible, which Riverside Auto surreptitiously included in the Contract's sale price, rather than as a finance charge.

9

Pl.'s Mem. at 8.   Plaintiff has therefore established that Riverside Auto's actions circumvented TILA's requirements.   *See id.* at 8.

> ### b.   Improperly Disclosed Finance Charge: GAP Insurance

Plaintiff next claims that the Contract's $395.00 charge for GAP insurance was improperly disclosed as part of the amount financed, rather than in the finance charge.   Pl.'s Mem. at 9.

In certain situations, Regulation Z permits sellers to exclude items such as GAP insurance. The regulations state that "[c]harges or premiums paid for debt cancellation coverage for amounts exceeding the value of the collateral securing the obligation or for debt cancellation or debt suspension coverage in the event of the loss of life, health, or income or in case of accident may *be excluded from the finance charge*, whether or not the coverage is insurance."   12 C.F.R. § 226.4(d)(3) (emphasis added).   However, this exclusion applies only if three conditions are satisfied: "(1) the lender discloses in writing that debt cancellation coverage is not required; (2) the lender discloses the fee for the initial term of coverage; and (3) the consumer signs or initials an 'affirmative written request for coverage after receiving' these two disclosures."   *Clark v. Drummer Boy Auto Sales, LLC*, No. 06 Civ. 1549 (AWT), 2009 WL 902382, at *2 (D. Conn. Mar. 31, 2009) (citing 12 C.F.R. § 226.4(d)(3)(i)).

In *Muñoz v. JLO Automobile, Inc.*, No. 19 Civ. 1793 (MPS), 2020 WL 4432946 (D. Conn. July 31, 2020), on a motion for default judgment, this Court recently addressed whether an auto dealer's failure to denote GAP insurance as part of a contract's finance charge constituted a TILA violation.   In that case, a sales representative orally represented to the plaintiff that a $752.00 charge for GAP insurance was mandatory to finance the balance owed on the car.   *See id.* at *3.   In a subsequent lawsuit, the plaintiff claimed that this fee was a finance charge, and should have been

disclosed as such.  *See id.*  However, the Court disagreed, because the contract satisfied the three prongs of the exemption, thus permitting the defendant to exclude GAP insurance from the finance charge: the contract clearly disclosed that GAP was not required, it disclosed the fee for the initial term of coverage, and the plaintiff signed the affirmative request for coverage right beneath the disclosures.  *See id.*

Turning to the case at bar, Plaintiff alleges that the GAP charge was disclosed in the Contract as part of the amount financed, instead of as part of the finance charge.  Pl.'s Mem. at 8.  Further, according to Plaintiff, Riverside Auto explained to Plaintiff that the finance company required GAP insurance and Plaintiff would not have been able to obtain credit through Sensible unless he spent the additional $395.00 fee.  *See id.*  According to Plaintiff, the GAP charge should have been included in the finance charge, rather than the amount financed.

The Court agrees.  Although the Contract discloses in writing that Plaintiff had the "[o]ption of purchasing GAP Waiver or Gap Coverage," *see* Doc. 10-2, at 9, and it discloses the fee for the initial term of coverage, *see id.* at 7, there is no evidence that Plaintiff signed or initialed an affirmative written request for coverage after receiving those two disclosures.  Accordingly, the Court finds that at least one prong of 12 C.F.R. § 226.4(d)(3)(i) has not been met, and therefore the GAP insurance should have been designated as a finance charge in the Contract, rather than a component of the amount financed, in violation of TILA.  *Cf. Velasquez v. Natalino Motors, LLC*, No. 08 Civ. 1427 (RNC), 2011 WL 4572060, at *4 (D. Conn. Sept. 30, 2011) (concluding after a bench trial that the defendant was liable under TILA because a retail installment contract failed to clearly disclose the nature of a $150.00 insurance charge, and also failed to disclose the plaintiff's

right to choose the insurance provider, and therefore the requirements for excluding the amount from the finance charge were not met).

### c. **Improperly Disclosed Down Payment**

Plaintiff next claims that the down payment in the Contract was improperly disclosed because the amount in the Contract was inaccurate. TILA states that a creditor must disclose the "amount financed," which is defined as, "the amount of credit of which the consumer has actual use." 15 U.S.C.A. § 1638(a)(2)(A). The amount is calculated by: (1) "tak[ing] the principal amount of the loan or the cash price less downpayment and trade-in"; (2) "add[ing] any charges which are not part of the finance charge or of the principal amount of the loan and which are financed by the consumer"; and (3) "subtract[ing] any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit." 15 U.S.C.A. § 1638(a)(2)(A)(i)–(iii).

Many of the cases in this District addressing improperly disclosed down payments involve circumstances in which auto dealers have *inflated* the amount that a consumer had paid as a down payment, rather than deflated it. *See, e.g.*, *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, No. 17 Civ. 1857 (VAB), 2020 WL 2543785, at *8–9 (D. Conn. May 18, 2020) (granting the plaintiff's motion for default judgment on a TILA claim where an automobile contract stated that the plaintiff paid $1000.00 as a down payment, even though the plaintiff alleged that he actually paid half that amount); *Llaurador-Perez v. Clean Country Cars, Inc.*, No. 13 Civ. 1333 (JBA), 2014 WL 5780706, at *4 (D. Conn. Nov. 5, 2014) (allegations that automobile contract indicated a down payment of $2000.00— even though the plaintiff only paid $500.00—were sufficient to state a claim for violation of TILA requirement that the amount financed was disclosed accurately).

Nonetheless, the principle remains the same: a creditor must accurately disclose the amount financed.  In the case at bar, Plaintiff claims that the Contract states that Plaintiff paid a down payment of $6,250.00, even though he actually paid a down payment of $6,500.00.  Pl.'s Mem. at 10.  These allegations are sufficient to establish liability under 15 U.S.C.A. § 1638(a)(2)(A).  *See Rodriguez*, 477 F. Supp. 2d at 480 (concluding that the plaintiff established TILA liability for purposes of a motion for default judgment on the basis of an automobile dealer's failure to disclose the correct amount of the payment due at inception).

### d. <u>Timing of Disclosures</u>

Plaintiff next claims that Riverside Auto violated TILA because it did not provide Plaintiff with financial disclosures pursuant to TILA prior to forging Plaintiff's signature on the Contract.

Regulation Z requires creditors to "make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep."  12 C.F.R. § 1026.17(a)(1).  With respect to the timing of the disclosures, the regulations require creditors to "make disclosures *before consummation* of the transaction."  12 C.F.R. § 1026.17(b) (emphasis added).  Consummation is defined as, "the time that a consumer becomes contractually obligated on a credit transaction."  12 C.F.R. § 1026.2(a)(13); *see also Sterling v. Farran & Ezedine, LLC*, No. 10 Civ. 1119 (WWE), 2011 WL 219697, at *3 (D. Conn. Jan. 20, 2011) (concluding that the defendant was liable under TILA because the plaintiff's affidavit established "that she was not provided with a copy of the contract prior to the consummation of the vehicle").

Plaintiff's claim regarding Riverside Auto's duty to provide TILA disclosures in a timely manner raises the question: when did Plaintiff became contractually obligated on the credit

transaction? Did that occur when Riverside Auto allegedly forged Plaintiff's signature on July 13, 2019, or when Plaintiff returned to the dealership and signed the Contract in person on July 16, 2019.

Under Connecticut law, "[a]s a general proposition, a forged document is a nullity." *Homeamerican Credit, Inc. v. Weiss*, No. CV 990591183S, 2000 WL 347785, at *3 (Conn. Super. Ct. Mar. 16, 2000) (citation omitted); *see also Smith v. Smith*, 183 Conn. 121, 122 (1981) (affirming trial court's ruling that deed was "a forgery, void and not binding upon the plaintiff" where the plaintiff alleged that the defendant "forged or caused to be forged her signature" on a property deed). "Basically, a person cannot be liable on an instrument where his signature is forged or unauthorized." *Hanover Ins. Co. v. Designs on Travel, Inc.*, No. CV 87-38710, 1991 WL 258103, at *2 (Conn. Super. Ct. Nov. 20, 1991) (concluding that the defendant could not be bound by forged agreement).[3]

With this guidance in mind, the Court does not believe that Plaintiff has established Riverside Auto's liability with respect to the timing of its TILA disclosures. On the basis of Plaintiff's allegations, Riverside Auto did not fail to make the requisite TILA disclosures "before consummation of the contract" because Plaintiff did not become "contractually obligated on a credit transaction" until *he* signed the Contract on July 16, 2019—not when Riverside Auto forged his signature three days earlier. 12 C.F.R. § 1026.17(a)(1), (b). And, according to Plaintiff, on July 16, 2019, Riverside Auto did provide Plaintiff with the disclosures before he signed the Contract.[4]

---

[3] Courts in this Circuit have not addressed the legal standard for determining when "a consumer becomes contractually obligated on a credit transaction" for purposes of TILA liability. 12 C.F.R. § 1026.2(a)(13). However, other courts have concluded that the question is based in state law. *See, e.g.*, *Cannon v. Metro Ford, Inc.*, 242 F. Supp. 2d 1322, 1328 (S.D. Fla. 2002) ("The determination of whether or when a party becomes 'contractually obligated' is a question of state law." (citing Official Staff Commentary § 226.2(a)(13)).

[4] According to Plaintiff, Riverside Auto "presented him with the forged Contract" and "instructed him to sign next to the forged electronic signature." Pl.'s Mem. at 4. And, before

Accordingly, for purposes of Riverside Auto's liability with respect to the timing of its TILA disclosures, it is of no moment that Riverside Auto failed to provide Plaintiff with the disclosures prior to Riverside Auto's forgery of Plaintiff's signature because that document was merely a "nullity" under Connecticut law, and Plaintiff did not become "contractually obligated on a credit transaction" on the basis of the forgery.   12 C.F.R. § 1026.2(a)(13).   Thus, Plaintiff has not established Riverside Auto's liability in connection with 12 C.F.R. § 1026.17(b).

### e.     Inaccurate Schedule of Payments

Plaintiff next argues that the Contract inaccurately lists the loan's payment schedule. Regulation Z requires creditors to disclose "the number, amounts, and timing of payments scheduled to repay the obligation."  12 C.F.R. § 1026.18(g).

Based on the Court's research, no court in this Circuit has addressed this particular provision of Regulation Z.  However, the Fifth Circuit in *Lea v. Buy Direct, L.L.C.*, 755 F.3d 250 (5th Cir. 2014) addressed analogous circumstances involving a creditor's failure to comply with its payment schedule disclosure obligations.  In that case, a consumer electronics retail installment contract did not show the day of the month that the plaintiff's payments were due, or the beginning date of the installment payments.  *See id.* at 254.  The Fifth Circuit concluded that the defendant's failure to include the starting date and interval was a "technical violation," but ruled, in any event, that the plaintiff was owed damages under TILA.  In so holding, the Fifth Circuit reiterated that:

> TILA is a private attorneys general statute enacted to "penalize noncomplying creditors and deter future violations."  *Davis*, 673 F.2d at 869.  Plaintiffs recover "even if they have not sustained any actual damages, or even if the creditors are guilty of only minute deviations

---

signing, Plaintiff reviewed the Contract, and asked Riverside Auto about its contents (specifically, the GAP charge).  *See id.* at 3–4.

> from the requirements of TILA." *Id.* Perhaps our reversal falls into the category of letting no good deed go unpunished. Another perspective, though, is that TILA provides an unvarying set of rules that protect consumers who might otherwise voluntarily waive what they should not. We do not perceive any harm here, but harm is not a prerequisite for relief.

*Id.* at 254. *But cf. Streit v. Fireside Chrysler-Plymouth, Inc.*, 697 F.2d 193, 196 (7th Cir. 1983) ("[I]t is not necessary or appropriate to hold creditors absolutely liable for every non-compliance and to disregard completely the factual situation out of which the claim has arisen.").

Although I am not bound by *Lea*—and, it addressed a creditor's omission of key aspects of a payment schedule, not a creditor's inaccurate representation of a payment schedule—I find its reasoning persuasive. Plaintiff claims that the Contract lists the due date of the first weekly payment as July 26, 2019, but he was charged for the first payment on July 16, 2019—ten days before the Contract's schedule of payments. Pl.'s Mem. at 11. Although the discrepancy in the payment schedule is merely a "minute deviation[]," it is a deviation nonetheless. *Lea*, 755 F.3d 250. Accordingly, the Court finds that Plaintiff has established liability under 12 C.F.R. § 1026.18(g).

### f.   Inaccurate APR

Plaintiff lastly claims that Riverside Auto violated TILA because it did not properly disclose the transaction's APR. TILA requires "creditors in consumer credit transactions [to] disclose . . .the APR." *James*, 2018 WL 1582552, at *3 (citing 15 U.S.C. § 1638(a)).

According to Plaintiff, because the GAP charge was included in the Contract as part of the total amount financed rather than in the finance charge, *see supra* Section III.A.1.b, "the APR listed on the Contract is incorrect and considerably lower than reality," Pl.'s Mem. at 10. Likewise, because Riverside Auto misrepresented the date of the first payment as July 26, 2019, rather than

16

July 16, 2019, the Contract "understat[ed] . . . the APR by about a quarter of a percent since the terms of credit is actually shorter than disclosed."  Pl.'s Mem. at 12.

The Court agrees, and finds the Court's analysis on a motion for default judgment in *Alexis* instructive.  In that case, the Court concluded that an auto dealer's failure to include a $1,100.00 bank fee in the sale price, rather than in the finance charge, permitted the defendant to understate the finance charge.  *See Alexis*, 2018 WL 5456491 at *6.   As a result of that violation, the Court noted that the APR in the contract was also inaccurate: if the defendant "had included the $1,100 bank fee in the finance charge as required by the TILA," the contract's APR "would have risen."  *Id.*

The same is true in the case at bar.  If Riverside Auto had included the GAP payment in the finance charge, the Contract's APR would have risen.  Similarly, if the Contract had accurately represented the date of Plaintiff's first payment, the actual APR would have been higher. Accordingly, Plaintiff has established liability on the basis of these allegations as well.

   **2.**   ***Retail Installment Sales Financing Act***

The Court next turns to Plaintiff's claim that Riverside Auto violated RISFA: (1) because the state statute incorporates the requirements of the federal TILA; (2) because Riverside Auto forged Plaintiff's signature on the Contract; (3) that the Contract was not completed as to all essential provisions; and (4) that Defendant charged an APR that was greater than RISFA's statutory ceiling of nineteen percent.  According to Plaintiff, these violations "entitle Plaintiff to rescind the Contract."  Pl.'s Mem. at 12.  The Court will address these claims in order.

   **a.**    **RISFA's Incorporation of TILA's Requirements**

Plaintiff claims that Riverside Auto violated RISFA because the statute incorporates TILA's requirements with respect to retail installment contracts.  The Court agrees.  As a Connecticut state

court explained, "Connecticut's RISFA, General Statutes § 36a–771(b), requires sellers to comply with the Connecticut Truth in Lending Act, which in turn incorporates the requirements of the federal TILA and Regulation Z." *Freeman v. A Better Way Wholesale Autos, Inc.*, No. HHDCV136045900S, 2015 WL 2037943, at *5 n.6 (Conn. Super. Ct. Apr. 1, 2015) (citing General Statutes §§ 36a–675 *et seq.*), *aff'd*, 174 Conn. App. 649 (2017).[5]

I have also previously explained that violations of TILA trigger liability under RISFA. *See O'Neill v. Country Motors, II, Inc.*, No. 15 Civ. 1069 (CSH), 2015 WL 8779594, *10 (D. Conn. Dec. 15, 2015). Because the plaintiffs in that case had alleged that the defendants "violated TILA," I ruled that those violations also "constitute[ed] [a] violation of RISFA." *Id.* (citations omitted); *see also James*, 2018 WL 1582552, at *4 ("A TILA violation of the type present in this case also constitutes a violation of RISFA. . . . Having adequately alleged that the failure to disclose the cost of the service contract as part of the finance fee was a TILA violation, therefore, Plaintiffs are also entitled to default judgment on their RIFSA claim." (citations omitted)).

Accordingly, Riverside Auto has violated RISFA for the same reasons discussed in *supra* Section III.A.1 in connection with TILA.

   **b.** <u>**Forgery of Plaintiff's Signature and Accuracy of the Contract**</u>

Plaintiff next argues that Riverside Auto violated RISFA because the Contract did not "contain all the agreements of the parties," and it was not "completed as to all essential provisions," in violation of Conn. Gen. Stat. Ann. § 36a-771(a). That provision provides:

---

[5] Section 36a-771(b), captioned "General contract requirements," states: "Every retail installment contract for the purchase of consumer goods subject to section 36a-774 and this section shall set forth the information required to be disclosed under sections 36a-675 to 36a-686, inclusive, and the regulations thereunder, using the form, content and terminology provided therein." Conn. Gen. Stat. Ann. § 36a-771(b).

> Every retail installment contract shall be in writing, shall contain all
> the agreements of the parties and shall be completed as to all essential
> provisions prior to the signing of the contract by the retail buyer.  No
> installment contract shall be signed by the retail buyer when such
> contract contains blank spaces to be filled in except that this
> provision shall not apply to serial number or other identifying marks
> which are not available for description at the time of execution of
> such contract.  The retail seller shall deliver to the retail buyer a true
> and complete executed copy of the retail installment contract at the
> time the retail buyer signs such contract.

Conn. Gen. Stat. Ann. § 36a-771(a).

Plaintiff argues that the Contract did not contain all of the agreements of the Parties and failed to contain all of the essential terms of the Parties' agreement because the Contract did not reference the fact that Plaintiff paid a down payment of $6,500.00—$250.00 more than what the Contract provides.  Pl.'s Mem. at 13.  Similarly, Plaintiff claims that the Contract should have specified that the additional $250.00 was applied to registration costs associated with the transaction and Plaintiff's first loan payment.  *See id.*; *see also* Compl. ¶ 18.  According to Plaintiff, the Contract therefore did not "state all aspects of the parties' agreement."  Pl.'s Mem. at 13.

The Court agrees.  The Contract did not contain "all of the agreements of the parties" because it omitted the Parties' agreement that the down payment was actually $250.00 greater than the amount specified in the Contract; and that the Parties agreed that the $250.00 would be applied to registration costs and Plaintiff's first loan payment.  Accordingly, Plaintiff has established Riverside Auto's liability with respect to section 36a-771(a) of RISFA.[6]  *See, e.g.*, *O'Neill*, 2015 WL 8779594,

---

[6]  Plaintiff also argues that Riverside Auto's forgery of Plaintiff's signature implicates section 36a-771(a) because the Contract was assigned to Sensible "by the time it was finally presented to Plaintiff."  Pl.'s Mem. at 13.  In other words, Plaintiff appears to be making another argument related to timing: that at the time of the forgery, the Contract did not "contain all the agreements of the parties" because it included provisions such as the assignment, of which Plaintiff was unaware.  Conn. Gen. Stat. Ann. § 36a-771(a).  However, similar to *supra* Section A.1.d, the timing of the

at *8 ("If, as Plaintiffs allege, the Contract failed to contain the requisite key provisions"—*e.g.*, a failure to include a deferred payment within the schedule of payments, the false inclusion of $400.00 as a down payment, and a failure to accurately itemize the amount financed—"there may have been a violation of . . . RISFA").

### c.      Interest Rate Maximum

Next, Plaintiff claims that Riverside Auto violated Conn. Gen. Stat. Ann. § 36a-772(a)(3)(C) by charging an APR greater than nineteen percent of the Contract.

One of RISFA's mandates is to "limit[] interest rates" that retailers may charge on various consumer credit transactions, including "on motor vehicle installment loans." *Sikorsky Fin. Credit Union, Inc. v. Butts*, 315 Conn. 433, 449 (2015).  For example, a retailer of motor vehicles may not "charge, contract for, receive or collect a finance charge expressed as an annual percentage rate on any retail installment contract covering the retail sale of a motor vehicle" that exceeds nineteen percent for "used motor vehicles of a model designated by the manufacturer by a year more than two years prior to the year in which the sale is made."  Conn. Gen. Stat. Ann. § 36a-772(a)(3)(C); *see also Alexis*, 2018 WL 5456491, at *6 ("Under Connecticut law, the maximum permissible finance charge for a used car more than two years old, expressed as an annual percentage rate (APR), is 19%." (citing Conn . Gen. Stat. § 36a-772)).

---

forgery is not implicated here because it resulted in a "nullity."  *Weiss*, 2000 WL 347785, at *3. Rather, before signing the Contract three days later, Plaintiff had access to a document that theoretically contained "all the agreements of the parties" and was "completed as to all essential provisions" (even though, as the Court discussed *supra*, that was not actually the case, but for reasons unrelated to timing).  Conn. Gen. Stat. Ann. § 36a-771(a).  Therefore, the Court rejects Plaintiff's timing argument for purposes of liability under section 36a-771(a) of RISFA.

Plaintiff claims that Riverside Auto's failure to accurately calculate the finance charge in the Contract—for example, by including a $395.00 charge for GAP insurance and a $600.00 charge for Sensible's credit services in the amount financed rather than in the finance charge—resulted in the Contract's misrepresentation of its APR. According to Plaintiff, "if the finance charges associated with the transaction [were] allocated correctly, the APR is in excess of 25%." Pl.'s Mem. at 13.

The Court agrees. In fact, the Court addressed a similar situation in *Alexis*. In that case, the plaintiff established that an auto dealer violated RISFA by including $1,100.00 in the contract's sale price, rather than including it in the contract's finance charge. *See Alexis*, 2018 WL 5456491 at *6. The Court ruled that this violated RISFA because the additional charge effectively increased the APR for the automobile contract "above the maximum statutory rate" if the APR had been properly calculated. *Id.* (citing Conn. Gen. Stat. § 36a-772); *cf. Velasquez v. Natalino Motors, LLC*, No. 08 Civ. 1427 (RNC), 2011 WL 4572060, at *5 (D. Conn. Sept. 30, 2011) (concluding after a bench trial that the defendant violated RISFA because "[t]he improper characterization of [a] $150 charge for single interest insurance as part of the amount financed, rather than part of the finance charge," increased the transaction's interest rate above nineteen percent).

Turning to the case at bar, Plaintiff makes similar allegations regarding the Contract and its effective interest rate. Plaintiff claims that the Contract is a retail installment sales contract within the meaning of RISFA. Compl. ¶ 29.[7] Additionally, Plaintiff alleges that Riverside Auto violated

---

[7] A "retail installment contract" is defined as, "any security agreement, as defined in subdivision (74) of subsection (a) of section 42a-9-102, made in this state, including one in the form of a mortgage, conditional sale contract or other instrument evidencing an agreement to pay the retail purchase price of goods, or any part thereof, in installments over a period of time and pursuant to which a security interest, as defined in subdivision (35) of subsection (b) of section 42a-1-201, is retained or taken by the retail seller for the payment of the amount of such retail installment contract." Conn. Gen. Stat. Ann. § 36a-770(c)(12).

RISFA because the true annual percentage rate associated with the Contract is in excess of nineteen percent as a result of Riverside Auto's failure to include the $600.00 price increase and the $395 GAP charge as part of the finance charge. *Id.* ¶ 30; *see also id.* ¶¶ 32–34 (additional allegations regarding Defendant's violation of RISFA). Accordingly, the Court finds that Plaintiff has established Defendant's liability with respect to section 36a-772(a)(3)(C).

### d.   Rescission

Plaintiff asserts that he previously demanded from Riverside Auto a rescission of the Contract, and that he may now "claim a rescission as a remedy for a violation of RISFA." Pl.'s Mem. at 13.

RISFA does not explicitly provide for such a remedy, but in *Keyes v. Brown*, 155 Conn. 469 (1967), the Connecticut Supreme Court concluded that the statute implicitly provides for a right of rescission if a "retail installment contract . . . is not completed in conformity" with RISFA's mandates. *Id.* at 475. In other words, the retail installment contract is "voidable at the option of the retail buyer." *Id.*; *see also Barco Auto Leasing Corp. v. House*, 202 Conn. 106, 113 (1987) ("[T]here is no question that [parties] are entitled to rescission of the contract as an implied remedy under RISFA."); *O'Neill*, 2015 WL 8779594, at *11 ("A proper remedy for violation of RISFA includes rescission."). As this Court has further explained:

> While rescission is ordinarily used as a remedy in fraud actions, where a party has executed a contract in reliance on a misrepresentation or omission, its availability in RIFSA cases is not so constrained; rescission is available even where a RIFSA violation is based upon a technical defect under TILA.

*James*, 2018 WL 1582552, at *5 (citing *Tirado v. Ofstein*, No. HHDCV054014648S, 2008 WL 902506, at *13 (Conn. Super. Ct. Mar. 14, 2008)).

However, "[a]s a condition precedent to a rescission, the plaintiffs [are] required to allege and prove that they had restored or offered to restore [the defendant] to its former condition as nearly as possible." *Keyes*, 155 Conn. at 476; *see also Bonafide v. Tomun*, No. CV065002770S, 2008 WL 5505439, at *2 (Conn. Super. Ct. Dec. 11, 2008) ("It is well established in Connecticut that a condition precedent to the remedy of rescission is the offer by the party seeking that remedy to restore the other party to its former condition as nearly as possible."). "In restoring the parties to their respective positions prior to the contract, courts generally order the seller to refund the amounts paid by the buyer for the goods and the buyer to return the goods to the seller." *Barco Auto Leasing Corp.*, 202 Conn. at 113 (citation omitted).

In *O'Neill*, I previously addressed whether the plaintiffs had alleged a plausible claim for rescission, albeit on a motion to dismiss. *See O'Neill*, 2015 WL 8779594, at *11. In that case, the automobile contract at issue allegedly "failed to contain the requisite key provisions" in violation of RISFA. On the basis of that statutory violation, I explained:

> Under the UCC, "[r]escission is utilized as a term of art to refer to a mutual agreement to discharge contractual duties," for example when one party has materially breached the terms of the contract, "cancellation for breach and avoidance on the grounds of infancy or fraud." Black's Law Dictionary (10th ed. 2014.) If the important terms of the Contract were fraudulent or purposefully omitted, Plaintiffs have alleged a plausible claim for rescission.

*Id.*

The case at bar is similar. Plaintiff claims that the Contract was "not completed in conformity" with RISFA's mandates, for the reasons discussed in *supra* Sections III.A.2.b and III.A.2.c. *Keyes*, 155 Conn. at 475. Additionally, although Plaintiff does not explicitly state that he offered to return the automobile to Riverside Auto, Plaintiff does claim that he demanded from

23

Riverside Auto a rescission of the Contract, and that "Riverside Auto refused to return the amounts paid by Plaintiff and participating in the deal." Pl.'s Mem. at 13–14. Plaintiff also asserts that he "provided notice to Riverside Auto before initiating a lawsuit that is was demanding rescission and was only met with refusal." *Id.* at 14. Accepting Plaintiff's allegations as true, and construing all reasonable inferences in his favor, as the Court must, *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (moving party seeking default judgment is entitled to all "reasonable inferences from the evidence offered"), Plaintiff has established that he "offered to restore" Riverside Auto "to its former condition as nearly as possible," *Keyes*, 155 Conn. at 476. Accordingly, pursuant to RISFA, Plaintiff's Contract with Riverside Auto is hereby rescinded.

### e.   Revocation

Aside from seeking a rescission of the Contract, Plaintiff also seeks an Order from this Court directing Sensible to release title to Plaintiff so that Plaintiff may sell the vehicle and apply the proceeds to the judgment in this action. Pl.'s Mem. at 14, 29. According to Plaintiff, "[a]ny amounts received in excess of the judgment will be remitted to Riverside Auto." *Id.* at 14.

However, Plaintiff in his Brief does not cite to any authorities—statutory, case law, or otherwise—to support his assertions. Compl. ¶¶ 36–37; Pl.'s Mem. at 14.[8] In fact, Plaintiff devotes only two sentences in his Brief to his request for an Order of this nature.

In the absence of proper briefing, the Court will not determine whether Plaintiff's requested Order is appropriate under the circumstances of this case. *See, e.g.*, *Norton v. Michonski*, 368 F.

---

[8]  Additionally, because the remedy of rescission, discussed *supra*, provides that "courts generally order the seller to refund the amounts paid by the buyer for the goods and the buyer to return the goods to the seller," it is not clear that the implied remedy for RISFA violations that the Connecticut Supreme Court recognized in *Keyes* extends to the type of Order that Plaintiff now seeks. *Barco Auto Leasing Corp.*, 202 Conn. at 113.

Supp. 2d 175, 180 n.4 (D. Conn. 2005) ("Defendants offer no law or argument in support of this assertion.  As a result, the Court will not address this bare assertion or attempt to raise arguments not raised by the parties themselves."); *cf. Probulk Carriers Ltd. v. Peraco Chartering USA LLC*, No. 11 Civ. 5686 (RJS), 2012 WL 3095319, at *11 (S.D.N.Y. July 20, 2012) ("[B]ecause [the party] d[id] not raise this argument in its briefing, the Court will not address it *sua sponte*.").

To be sure, the remedy of revocation—which is distinct from the remedy of rescission, discussed *supra*—*does* permit a buyer to resell goods under circumstances similar to the case at bar. Revocation, which is codified at section 42a-2-711 of the General Statutes, is a "specific remedy [that] permit[s] a buyer under proper conditions to force the seller to retake nonconforming goods even if the buyer has already accepted them." *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 119 (1976).  "When a buyer justifiably revokes acceptance, he may cancel and recover so much of the purchase price as has been paid." *Id.* at 120.  Additionally, the statute permits a buyer to resell goods if he or she has properly revoked acceptance of a contract: "On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller ." Conn. Gen. Stat. Ann. § 42a-2-711(c).[9]

---

[9]  Section 42a-2-608 of the General Statutes lays out the following conditions for the buyer who seeks to justify revocation of acceptance: "(1) a nonconformity which substantially impairs the value to the buyer; (2) acceptance (a) with discovery of the defect, if the acceptance is on the reasonable assumption that the nonconformity will be cured, or (b) without discovery of the defect, when the acceptance is reasonably induced by the difficulty of the discovery or the seller's assurances; (3) revocation within a reasonable time after a nonconformity was discovered or should have been discovered; and (4) revocation before a substantive change occurs in the condition of the goods not caused by their own defects." *Id.*

Moreover, this Court has previously entered an order permitting an automobile buyer who properly revoked acceptance to sell a vehicle if the defendant did not satisfy the judgment, in a comparable ruling on a motion for default judgment. *See Sterling*, 2011 WL 219697, at *7. In *Sterling*, the Court stated:

> Plaintiff's affidavit also demonstrates that she has properly revoked acceptance of the vehicle pursuant to Conn. Gen.Stat. §§ 42a–2–608, 42a –2–711 and 42a–2–721. Because the Court will award plaintiff damages in the form of her down payment, she is not equitably entitled to keep the vehicle. Plaintiff is therefore ordered, upon Town & Country's satisfaction of the judgment to return the vehicle to Town & Country. Should Town & Country not satisfy the judgment within sixty days of the filing of the judgment, unless the parties reach a separate agreement, plaintiff will be permitted to sell the car. She may keep all proceeds of the sale to satisfy the judgment as well as cover any administrative costs incurred in selling the vehicle. Any proceeds in excess of the judgment plus administrative costs shall be turned over to Town & Country.

*Id.*

However, *Sterling* is distinguishable. In that case, the Court concluded on the basis of the plaintiff's submissions that he properly revoked acceptance under Connecticut law. *See id.*; *see also Hernandez*, 2020 WL 2543785, at *11 (granting default judgment on the plaintiff's revocation claim because "[the plaintiff's] well-pleaded allegations establish that he justifiably revoked acceptance of the Vehicle under Conn. Gen. Stat. § 42a-2-608"). In contrast, in the case at bar, Plaintiff has only argued that he sought to rescind—rather than revoke—acceptance of the vehicle, and they are distinct remedies. *See Conte*, 172 Conn. at 119–20 ("Under the code, a buyer's revocation of

acceptance is a distinct course of action not to be confused with rescission by mutual consent."). The Court will therefore not attempt to raise arguments not raised by Plaintiff himself.[10]

Accordingly, the Court reserves judgment and takes no present position on Plaintiff's request for an Order permitting him to sell the Vehicle. If Plaintiff desires to press that claim, he must file a supplemental brief supporting it on or before **September 16, 2020**, failing which the Court will dismiss that particular claim.

### 3.   *Connecticut Unfair Practices Claim*

As a final claim, Plaintiff asserts that Riverside Auto violated CUTPA, which "prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Alexis*, 2018 WL 5456491, at *5 (internal quotation marks omitted). To establish a CUTPA violation, a plaintiff must show that the defendant "engage[d] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

---

[10]   The Court's conclusion is further supported by the fact that Plaintiff failed to move for entry of default judgment on a claim of revocation even though he originally made such an allegation in his Complaint—that he "retained possession of the Vehicle pursuant to his security interest pursuant to Conn. Gen. Stat. § 42a –2–711(3)." Compl. ¶ 21. The absence of any briefing that supports Plaintiff's request for an Order is therefore even more conspicuous. Additionally, the Court is further surprised by Plaintiff's failure to properly brief this issue, given Attorney Blinn's familiarity with this area of the law: Attorney Blinn is attorney of record in the overwhelming majority of the district court cases cited in this Ruling and Order. *See Munoz v. JLO Auto., Inc.*, No. 19 Civ. 1793 (MPS), 2020 WL 4432946 (D. Conn. July 31, 2020); *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, No. 17 Civ. 1857 (VAB), 2020 WL 2543785 (D. Conn. May 18, 2020); *Alexis v. PMM Enterprises LLC*, No. 17 Civ. 1622 (MPS), 2018 WL 5456491 (D. Conn. Oct. 29, 2018); *James v. Lopez Motors, LLC*, No. 16 Civ. 835 (VLB), 2018 WL 1582552 (D. Conn. Mar. 31, 2018); *O'Neill v. Country Motors, II, Inc.*, No. 15 Civ. 1069 (CSH), 2015 WL 8779594 (D. Conn. Dec. 15, 2015); *Llaurador-Perez v. Clean Country Cars, Inc.*, No. 13 Civ. 1333 (JBA), 2014 WL 5780706 (D. Conn. Nov. 5, 2014); *Sterling v. Farran & Ezedine, LLC*, No. 10 Civ. 1119 (WWE), 2011 WL 219697 (D. Conn. Jan. 20, 2011); *Poulin v. Balise Auto Sales, Inc.*, No. 08 Civ. 1618 (CSH), 2010 WL 1370862 (D. Conn. Apr. 5, 2010), *aff'd*, 647 F.3d 36 (2d Cir. 2011).

Conn. Gen. Stat. Ann. § 42-110b(a).  Courts consider the following factors when evaluating whether a practice is "unfair" under CUTPA:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Ulbrich v. Groth*, 310 Conn. 375, 472 (2013) (Zarella, J., concurring in part and dissenting in part).

Plaintiff claims that Riverside Auto's "statutory violations of TILA invoke the 'public policy' prong of an unfair trade practice."  Pl.'s Mem. at 15.  The Court agrees.  As I have previously explained, "[p]laintiffs have alleged a facially plausible CUTPA claim on multiple grounds, including, *inter alia*, violation of TILA."  *O'Neill*, 2015 WL 8779594, at *10 (citing *Cheshire Mortgage Serv., Inc. v. Montes*, 223 Conn. 80, 105 (1992)).  This Court has arrived at that conclusion in multiple other cases.  *See, e.g.*, *Alexis*, 2018 WL 5456491, at *6 ("[T]he [plaintiffs] establish that [the defendant] violated CUTPA by violating other state and federal statutes."); *James*, 2018 WL 1582552, at *6 ("The Connecticut Supreme Court has held that violations of TILA offend public policy under CUTPA."); *Velasquez*, 2011 WL 4572060, at *5 ("TILA violations are unfair trade practices in violation of CUTPA.  Accordingly, I conclude that [the defendant] has violated CUTPA with regard to the charge for single interest insurance." (citation omitted)).

Accordingly, the Court need not extensively analyze this claim because it is clear that Defendant's TILA violations—including its failure to disclose finance charges, and the other inaccurate information that it included in the Contract—violated CUTPA.  *See supra* Section III.A.1.

B.     **Damages**

The Court now turns to the second stage of this Ruling: a determination of the amount of

damages.  As I recently explained in *Verlan Fire Insurance Company v. Conve & Avs, Inc.*, No. 18

Civ. 1567 (CSH), Memorandum and Order, Doc. 15 (D. Conn. Jan. 28, 2019) (referring case to a

Magistrate Judge for a hearing on the amount to which the plaintiff was entitled in a default

judgment), the question that arises on Plaintiff's present motion for a default judgment is whether

the Court must conduct a hearing on the recoverable amount of Plaintiff's damages.  *See id.* at 2.

Under the Federal Rules of Civil Procedure, "[i]f the plaintiff's claim is for a sum certain or

a sum that can be made certain by computation, the clerk . . . must enter judgment for that amount

and costs against a defendant."  Fed. R. Civ. P. 55(b)(1).  But, "[i]n all other cases, the party must

apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  In ruling on a motion for default

judgment, "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate

judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).

The Second Circuit has stated that, under Rule 55(b)(2), "a hearing is not necessary when the

district court relies upon detailed affidavits and documentary evidence, supplemented by the District

Judge's personal knowledge of the record to calculate a damage award."  *House v. Kent Worldwide*

*Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (citing *Transatlantic Marine Claims*

*Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Further, a district court has "wide discretion in determining whether it is 'necessary and proper' to

hold an inquest on damages."  *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993).

Even so, this Court in *Rodriguez* concluded that an evidentiary hearing was necessary on the

question of damages.  In that case, the plaintiff brought analogous TILA and CUTPA claims arising

out of the plaintiff's entrance into a credit transaction with an auto sales company. *Rodriguez*, 477

F. Supp. 2d at 479. The defendant failed to timely appear, answer, or otherwise respond to the

complaint; thereafter, default was entered; and, the plaintiff filed a motion for default judgment. *See*

*id.* After determining that the plaintiff had established liability with respect to the three counts in

the complaint, the Court granted the plaintiff's motion and entered judgment in his favor. *See id.*

at 481. However, on the question of damages, the Court referred the action to a Magistrate Judge

for a hearing on damages, attorney's fees, and costs, after making the following observations:

> While the Truth in Lending Act . . . provide[s] for awards of statutory
> damages, [TILA] and the CUTPA also provide for awards of actual
> damages. Moreover, even the award of statutory damages requires
> some factual findings in these circumstances (in the case of the Truth
> in Lending Act, determination of the amount of any finance charge in
> connection with the transaction, *see* 15 U.S.C. § 1640(a)(2).

*Id.*

The auto sales company in *Rodriguez* is similar to Riverside Auto in the case at bar.

Riverside Auto, despite its default in answering the Complaint, is not bound by Plaintiff's calculation

of the amount of damages ascribable to its conduct. Nor is the Court, for that matter. *See Chance*,

2017 WL 5515951, at *2 ("A court may not 'just accept [a plaintiff's] statement of the damages,'

even in a default judgment." (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping*

*Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997))). While the effect of an entry of

default "is to establish the liability of the defaulting party as the basis for default judgment" so that

"[a]fter defaulting a party has no right to dispute the issue of liability," "[a] party who defaults by

failing to plead or defend does not admit the allegations in the claim as to the amount of damages.

10 *Moore's Federal Practice*, § 55.32[1] [a], [c] (3d ed. 2007) "The claimant must establish the

amount of damages, and the defaulting party is entitled to be heard." *Id.*; *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014) ("Before granting a damages award on a default judgment, the district court must ensure that the plaintiff has established the amount of damages to a 'reasonable certainty.'" (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999))).

Therefore, although the Court GRANTS Plaintiff's motion for default judgment with respect to liability, there must still be a hearing in this case on the amount to which Plaintiff is entitled, and the Court ORDERS that a hearing be referred to and conducted by a United States Magistrate Judge of the Court. *See Smith v. Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO*, No. 05 Civ. 829 (JBA), 2008 WL 11480814, at *4–5 (D. Conn. Mar. 10, 2008) (granting the plaintiff's motion for default judgment and referring the case to a magistrate judge for a damages hearing); *cf. Transatlantic Marine Claims Agency*, 109 F.3d at 111 (remanding to the district court to establish damages with reasonable certainty, but noting that any action by the district court would "in no way undermine the validity of the default judgment on the issue of liability").

## IV.   <u>CONCLUSION</u>

The Court makes the following Ruling and Order:

1.    Plaintiff's motion for default judgment [Doc. 10] is GRANTED with respect to the issue of liability.

2.    This case is hereby REFERRED to a United States Magistrate Judge to conduct a hearing on the issue of the amount of damages.  The Clerk is directed to make the necessary appointment; a separate Order of Referral of this Court will issue in that regard.

3.      Plaintiff's motion for an Order from this Court directing Sensible to release title is DENIED WITHOUT PREJUDICE to refiling with adequate briefing.   Plaintiff may file supplemental briefing regarding this form of relief by **September 16, 2020.**

4.      It is further ORDERED that the Court shall retain jurisdiction over the Parties and the subject matter jurisdiction for purposes of interpreting and enforcing the default judgment entered against Riverside Auto, as well as the other terms and provisions of this Ruling and Order.  *See, e.g.*, *Carney v. Beracha*, No. 12 Civ. 180 (SRU), 2016 WL 10254460, at *4 (D. Conn. July 22, 2016) (concluding, in an order on a motion for entry of default judgment, that the Court would "retain jurisdiction to, among other things, interpret and enforce the terms and provisions of th[e] Order"); *Furnished Quarters, LLC v. Wright*, No.  12 Civ. 1163 (VLB), 2013 WL 12290835, at *3 (D. Conn. Apr. 26, 2013) (ordering that the Court would "retain jurisdiction over the parties and the subject matter of this litigation for purposes of interpretation and enforcement of the Default Judgment and Permanent Injunction Order").

It is SO ORDERED.

Dated: New Haven, Connecticut
August 22, 2020

/s/ Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge