UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Billie Conley, Jr.,                     :
                                        :
      Plaintiff,                        :
                                        :
v.                                      :      CASE NO. 3:20CV284(CSH)
                                        :
1008 Bank Street, LLC,                  :
                                        :
      Defendant.                        :

<u>RECOMMENDED RULING AFTER HEARING ON DAMAGES</u>

Plaintiff, Billie Conley, Jr., commenced this action

against defendant, 1008 Bank Street, LLC alleging violations of

the Truth in Lending Act ("TILA"), the Connecticut Retail

Installment Sales Finance Act ("RIFSA"), and the Connecticut

Unfair Trade Practices Act ("CUTPA").[1]  Plaintiff perfected

service of the complaint upon defendant. (Dkt. #1; #6.)

Defendant failed to appear or respond to the complaint.  On

April 15, 2020, plaintiff filed a motion for default pursuant to

Rule 55(a) of the Federal Rules of Civil Procedure, which was

granted on April 16, 2020.

On April 17, 2020, the Honorable Charles S. Haight granted

the motion for default judgment as to liability only and

referred the case to the undersigned for a hearing on damages.

(Dkt. #11.)  The Court determined that defendant was liable for

---

[1] As was discussed with Counsel during the hearing, the matter of recission
and which party shall retain title to the vehicle in this case is still
pending before Judge Haight.  This ruling will address the monetary damages
stemming from TILA and CUTPA violations and will not address RIFSA remedies.

violations of TILA related to improper disclosure of the finance charge, providing an inaccurate schedule of payments, and providing an inaccurate APR. (Dkt. #11 at 7-17.) Additionally, Judge Haight concluded that as the defendant had violated TILA, the defendant was also liable for a violation of CUTPA. (Dkt. #11 at 26-28.) The Court held a hearing in damages on October 28, 2020 via Zoom. (Dkt. #21.) On October 5, 2020, plaintiff provided the defendant with notice of the court's scheduling order by serving Anthony Basilica as the agent for service on behalf of 1008 Bank Street, LLC D/B/A Riverside Auto II. (Dkt. #19.) However, the defendant did not appear at or participate in the hearing.

## I. <u>Facts[2]</u>

In July of 2019, plaintiff saw a 2012 BMW 750i (the "vehicle") for sale in an advertisement on Facebook Marketplace posted by defendant (or "Riverside"). The advertisement included a price of $15,900 and did not disclose a dealer conveyance fee. On or about July 10, 2019, plaintiff visited Riverside Auto II to view the vehicle, and he met with a salesman named Sean Richards. According to plaintiff's testimony Mr. Richards told him that the price of the vehicle

---

[2] The facts in this ruling are taken from the ruling issued by Judge Haight granting the plaintiff's motion for default judgment (dkt. #11), plaintiff's prehearing submission (dkt. #18), and the testimony of plaintiff during the hearing in damages.

was $16,500.  Plaintiff was informed by Mr. Richards that the price difference was due to his credit rating.  Despite the price change, plaintiff agreed to purchase the vehicle. Plaintiff agreed to make a down payment of $6,500.

Following the agreement and without plaintiff's knowledge, on July 13, 2019, defendant prepared a Retail Installment Contract ("Contract").  At the time of the preparation of the Contract defendant electronically placed plaintiff's signature on the Contract without his permission or consent.  Defendant then submitted the signed contact to Sensible Auto Lending, LLC ("Sensible").  Plaintiff testified that it was not possible for him to sign the Contract on the date it was signed because he was working out of state on that date.  The Contract listed the vehicle price as $17,566.80.  This price included tax of $1,066.80, a cash down payment of $6,250, and a charge of $395 for GAP coverage which was not requested or approved by plaintiff.

On July 16, 2019 plaintiff went to Riverside Auto to make the down payment and sign documents.  Plaintiff was then provided with the already submitted Contract and instructed to sign next to the forged electronic signature.  At this time plaintiff asked about the GAP change and was told that the GAP addendum was required by Sensible.  When defendant requested the

$6,500 down payment, plaintiff asked why the Contract listed

only $6,250.  Plaintiff was told that $150 of the amount would

go toward registration and $100 would be applied to his first

loan payment.

After plaintiff took delivery of the vehicle he noticed

smoke coming from the exhaust, that the tires appeared to be

bald, and the right side mirror was foggy and he could not see

out of it. While some repairs were covered under warranty,

plaintiff paid $1,103.27 out-of-pocket  for new tires and

installation to Town Fair Tire, $1,295.56 for engine repair and

$400.30 for an ignition coil replacement to BMW of North Haven,

as well as $630.11 to replace the foggy side mirror.[3]  The total

for plaintiff's out-of-pocket repairs is $3,429.24.

In October of 2019, Plaintiff notified defendant and

Sensible of his intent to rescind the transaction.  Plaintiff

demanded a return of all amounts paid under the Contract.

Riverside did not agree to rescission.  Plaintiff and Sensible

reached a settlement wherein all payments made by plaintiff were

returned and Sensible is holding the title pending the

resolution of matters before the Court.

---

[3] The Court notes that plaintiff testified at the hearing in damages that he
did not have the receipt for the mirror as it had been backordered.  The
plaintiff testified under oath to having paid $630.11 for the repair of the
mirror.

**Standard of Review**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). "The first step is to obtain an entry of default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, . . . Rule 55(a) empowers the clerk of court to enter a default." Id. "The next step requires the plaintiff to seek a judgment by default under Rule 55(b)." Id. "Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear." Id. In all other cases Rule 55(b)(2) governs. It requires a party seeking a judgment by default to apply to the court for entry of a default judgment." Id.

Once a court has determined that an entry of default is appropriate, "it may conduct a hearing or it may make such a finding on the basis of documentary evidence if damages are ascertainable with reasonable certainty." Chance v. Karmacharya, No. 3:14-cv-01111 (JAM), 2017 WL 5515951, at *1 (D. Conn. Mar. 20, 2017) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A district court may not "just accept [plaintiff's] statement of the damages. This [does] not satisfy the court's obligation to ensure that

the damages were appropriate." <u>Transatlantic Marine Claims</u>

<u>Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.</u>, 109

F.3d 105, 111 (2d Cir. 1997)

A court must consider several factors, "in deciding the

extent of damages to be awarded in a default judgment, . . .

including (1) the monetary award requested; (2) the prejudice

suffered by the plaintiff; (3) whether or not the default is

clearly established and (4) the nature of the plaintiff's claims

against the defendant." <u>GE Grp. Life Assur. Co. v. Ruzynski</u>,

No. 3:03CV1647 (DJS), 2004 WL 243346, at *1 (D. Conn. Feb. 9,

2004)(citing <u>Pinaud v. County of Suffolk</u>, 52 F.3d 1139, 1152 n.

11 (2d Cir.1995)). "In making this determination and evaluating

the allegations asserted against the defendant, the court may

'deem[ ] all the well-pleaded allegations in the pleadings to be

admitted" by the defendant.'" <u>GE Grp. Life Assur. Co.</u>, 2004 WL

243346, at *1 (quoting <u>Transatlantic Marine Claims Agency, Inc.</u>,

109 F.3d at 108).

## II. **Discussion**

### a. *Truth in Lending Act*

Congress enacted the Truth in Lending Act ("TILA") to

"'assure a meaningful disclosure of credit terms so that the

consumer [would] be able to compare more readily the various

credit terms available to him and avoid the uninformed use of

credit . . . .'" <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). Pursuant to TILA, a creditor must "make certain disclosures for each consumer credit transaction other than an open end consumer plan. . . . [T]he term 'credit' means, the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." <u>Krutchkoff v. Fleet Bank, N.A.</u>, 960 F. Supp. 541, 550 (D. Conn. 1996)(quoting 15 U.S.C. § 1638(a)(internal citations and quotation marks omitted).

TILA requires creditors to disclose clearly and accurately to consumers any finance charge that the consumer will bear under the credit transaction. 15 U.S.C. § 1638(a)(3). The regulation implementing TILA, known as "Regulation Z," defines "finance charge" to include "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 226.4(a). Thus, any cost imposed directly or indirectly upon a consumer as a condition of financing is ordinarily considered a finance charge unless subject to some exception.

Under TILA, creditors who do not comply with the mandated duty to disclose are subject to civil liability. <u>Fiorenza v.</u>

<u>Fremont Inv. & Loan</u>, No. 08 CIV. 858 SAS, 2008 WL 2517139, at

*2-3 (S.D.N.Y. June 20, 2008) (citing 15 U.S.C. § 1640(a)).

"The court need find 'only a single violation of the statutory

requirements to hold [a] defendant liable under TILA.'" <u>Clement</u>

<u>v. American Honda Fin. Corp.</u>, 145 F.Supp.2d 206, 210 (D.Conn.

2001) (quoting <u>Griggs v. Provident Consumer Disc. Co .</u>, 503

F.Supp. 246, 250 (E.D.Pa.1980)). "Accordingly, TILA has been

described as creating a system of strict liability in favor of

the consumers when mandated disclosures have not been made."

<u>Fiorenza</u>, 2008 WL 2517139, at *2-3 (quoting <u>Clement</u>, 145

F.Supp.2d at 210).

Defendant is subject to TILA insofar as defendant "(1)

regularly extends credit in the sale of motor vehicles . . . and

(2) is the person to whom the debt arising from the consumer

credit transaction is initially payable on the face of the

evidence of indebtedness." 15 U.S.C.A. § 1602(g). <u>See</u> <u>also</u>

<u>Frazee v. Seaview Toyota Pontiac, Inc.</u>, 695 F. Supp. 1406, 1408

(D. Conn. 1988)(finding an auto dealership "an arranger of

credit" subject to TILA where they prepared the loan Contract).

In the case at bar, Judge Haight has already determined

that this matter presents a variety of TILA violations by

Riverside. Specifically, the improper disclosure of the amount

financed, failure to properly disclose the GAP charge of $395.00

as a finance charge, failure to properly disclose the down payment, providing an inaccurate payment schedule, and providing an inaccurate APR all suffice to impose liability on Riverside for violating TILA. (Dkt. #11 7-17).

b. *Connecticut Unfair Trade Practices Act*

The Connecticut Unfair Trade Practices Act ("CUTPA"), provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a). Connecticut courts have applied the so-called "cigarette rule" in construing CUTPA. <u>Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.</u>, 202 F.3d 489, 501 (2d Cir. 2000). The "cigarette rule" provides:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen] . . . .
>
> All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . .

<u>Id.</u> (quoting <u>Saturn Constr. Co. v. Premier Roofing Co.</u>, 238 Conn. 293, 310-11 (1996)).

Defendant's violations of TILA also violate CUTPA as the violations offend the public policy prong of the cigarette rule. Cheshire Mortg. Serv., Inc. v. Montes, 223 Conn. 80, 105, 107 (1992); see also Tirado v. Ofstein, No. HHDCV054014648S, 2008 WL 902506, at *15 (Conn. Super. Ct. Mar. 14, 2008)(holding that a plaintiff need not demonstrate a separate violation of CUTPA where he has demonstrated a violation of TILA).  A violation of CUTPA allows the court to award actual damages, punitive damages, and reasonable attorney's fees. Tirado, 2008 WL 902506, at *14, *15.

*c. Damages*

In plaintiff's pre-hearing memorandum of law, plaintiff seeks damages in the amount of $25,199.24.  (Dkt. #18 at 5.) Plaintiff requests liquidated damages in the amount of $9,929.24, which includes $6,500 for the amount paid as a down payment and $3,429.24 for the cost of repairs to the vehicle. (Dkt. #18 at 5.)  Plaintiff further seeks statutory damages in the amount of $2,000.00 for the violation of TILA, punitive damages in the amount of $5,000 under CUTPA, and attorney's fees in the amount of $8,270.  (Dkt. #18 at 5.)

**i. Statutory Damages**

As noted previously, plaintiff is entitled to statutory damages for defendant's violation of TILA. 15 U.S.C.A. §

1640(a). Under TILA a successful plaintiff is entitled to statutory damages calculated by doubling the finance charge up to a cap of $2,000.00. 15 U.S.C.A. § 1640(a)(2)(A)(i). In this case, the evidence presented shows that the finance charge was $3,862.00. The Court therefore recommends awarding plaintiff $2,000 in statutory damages under TILA, representing the cap under TILA.

### ii. Attorney's Fees

Plaintiff is entitled to reasonable attorney's fees for defendant's violation of TILA. 15 U.S.C.A. § 1640(a). Plaintiff's attorney's fees are $8,270.00. After reviewing the billing information that plaintiff's counsel has submitted,[4] the Court determines that the attorney fees are reasonable. More specifically, after reviewing the declaration and contemporaneous billing statements, the Court finds that the hourly rates of $400 per hour and $275 per hour are reasonable given counsels' background and experience,[5] the hours spent and services rendered were reasonable, and the total amount billed

---

[4] Plaintiff's Motion for Judgment contains a declaration from plaintiff's counsel regarding his attorney's fees. (Dkt. #10-3.) The declaration discusses his background and experience, and his hourly rate, and the hourly rates of his associate and paralegal. The declaration also attaches a true and accurate copy of his billing statements containing contemporaneous billing entries. 9Dkt. #10-3 at 4-10).

[5] *See* Smith v. Better Way Wholesale Autos, Inc., 3:15cv599(AWT), ECF No. 38 (D. Conn. Oct. 26, 2017)(awarding Attorney Blinn $400 per hour in a case involving TILA).

was reasonable. The Court therefore recommends awarding plaintiff $8,270.00 in attorney's fees.

### iii. Liquidated Damages

TILA and CUPTA each allow plaintiff to recover actual damages stemming from defendant's violation. 15 U.S.C.A. § 1640(a); Conn. Gen. Stat. Ann. § 42-110g. Plaintiff seeks liquidated damages of $9,929.24. This amount is comprised of $6,500.00 for the down payment that Mr. Conley paid out of pocket and $3,429.24 for the total cost of repairs to the vehicle. As previously discussed, these repairs consisted of $1,103.27 for new tires and installation at Town Fair Tire, $1,295.56 for engine repair and $400.30 for an ignition coil replacement at BMW of North Haven, as well as $630.11 to replace the foggy right-side mirror.

The Court thus finds, and recommends, that plaintiff's liquidated damages should be $9,929.24, which includes plaintiff's down payment of $6,500, plus the combined repair costs $3,429.24 that plaintiff paid out-of-pocket.

### iv. Punitive Damages

Plaintiff's is also seeking an award of punitive damages under CUTPA. The court has discretion with respect to punitive damages under CUTPA. Conn. Gen. Stat. Ann. § 42-110g.

"[A]warding punitive damages and attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." Tanpiengco v. Tasto, 72 Conn. App. 817, 820 (2000)(quoting Gargano v. Heyman, 203 Conn. 616, 622 (1987)). "To award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." Id. at 821. "While the CUTPA statutes do not provide a method for determining punitive damages, courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." Perkins v. Colonial Cemeteries, Inc., 53 Conn. App. 646, 649, 734 A.2d 1010 (1999). Punitive damages, however, are not limited to common-law punitive damages or the amount of attorney's fees. Ulbrich v. Groth, 310 Conn. 375, 445, 447-452 (2013).

The Connecticut Supreme Court has set forth specific factors for examining whether a punitive damages award constitutes an abuse of discretion. Accordingly,

> "the court should consider 'degrees of relative blameworthiness,' i.e., whether the defendant's conduct was reckless, intentional or malicious; . . . whether the defendant's '[a]ction [was] taken or omitted in order to augment profit'; . . . whether the wrongdoing was hard to detect; . . . whether the injury and

> compensatory damages were small, providing a low
> incentive to bring the action; . . . and whether the
> award will deter the defendant and others from similar
> conduct, without financially destroying the defendant.'"

Ulbrich v. Groth, 310 Conn. 375, 454 (2013)(quoting Exxon

Shipping Co. v. Baker, 554 U.S. 471, 489-90, 512 (2008))

(internal citations omitted)(alternations in original).

The plaintiff testified and produced evidence that the

defendant in this case failed to properly disclose and document

the price of the vehicle and the GAP insurance.  In addition,

there was evidence that the defendant electronically forged

plaintiff's signature on the Contract that was supplied to

Sensible in order to finance the transaction.  Plaintiff

testified that when he confronted defendant about the forgery

and mentioned he had told Sensible he did not sign it, the only

response from defendant was that plaintiff should not have told

the bank.

Additionally, plaintiff testified that he informed

defendant about the problems he was experiencing with the

vehicle and was told by another automotive shop that the vehicle

was not safe to drive.  Plaintiff testified that Mr. Richards'

response was that the smoke was a known issue for BMWs and there

was nothing wrong with the tires.  In response to the mirror

issue Mr. Richards said he would get back to plaintiff and never

did.

Given the factual scenario in this case the defendant's conduct demonstrated "a reckless indifference to the rights of others or an intentional and wanton violation of those rights" thereby justifying an award of punitive damages.  _Tanpiengco_, 72 Conn. App. at 821 (2000)(quoting _Gargano_, 203 Conn. at 622). The conduct appears to have been designed to augment profit. Additionally, the injury and compensatory damages, while important to the plaintiff, were small, thereby providing a low incentive for plaintiff to bring the action.  The Court believes that an award of punitive damages in this case will sufficiently deter this type of behavior in the future.

The Court agrees with plaintiff that $5,000 constitutes a reasonable amount of punitive damages in this case. This amount is less than two times the costs of repairs that were undertaken in this case.  Additionally, the Court believes the size of this award will deter future conduct of this nature.

Prior to the hearing in damages, plaintiff served notice of the hearing, along with plaintiff's memorandum in support of damages, on the defendant but defendant failed to appear at the hearing or present any evidence that an award of $5,000 would financially destroy the defendant or be unreasonable.  The Court finds that the size of the punitive damages award is unlikely to

financially destroy the defendant.  The Court recommends an award of punitive damages in the amount of $5,000.

## III. <u>Conclusion</u>

Based on the foregoing, the undersigned recommends that plaintiff be awarded a total of $25,199.24 in damages.  This award consists of $9,929.24 in liquidated damages, $2,000 in TILA Statutory Damages, plus punitive damages in the amount of $5,000.  This award also includes Attorney's Fees in the amount of $8,270.

This is a recommended ruling.  <u>See</u> Fed. R. Civ. P. 72(b)(1).  Ordinarily, any objection to a recommended ruling must be filed with the Clerk of the Court within fourteen (14) days after the filing of the ruling.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  However, pursuant to the Local Rules, "[a]ny party receiving notice of an order or recommended ruling from the Clerk by mail shall have five (5) additional days to file any objection."  D. Conn. L. Civ. R. 72.2(a).  Plaintiff receives notice by mail. Accordingly, **any objection must be filed on or before October 4, 2021**.

Failure to file an objection within this time frame will preclude further review.  <u>See</u> 28 U.S.C. §636(b)(1); Rules 72, 6(a) and 6(d) of the Federal Rules of Civil Procedure; D. Conn. L. Civ. R. 72.2(a); <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15

(2d Cir. 1989) (per curiam); <u>F.D.I.C. v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at Hartford, Connecticut this 15th day of September 2021.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge